```
E4a6gals
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4            v.                              13 CR 735(DLC)
5  JUAN CARLOS VIDAL-GALICIA,
6            Defendant.
7  ------------------------------x
8                                          New York, N.Y.
                                           April 10, 2014
9                                          4:00 p.m.
10
   Before:
11
                  HON. DENISE L. COTE,
12
                                           District Judge
13
14                       APPEARANCES
   PREET BHARARA
15      United States Attorney for the
        Southern District of New York
16 DANIEL TRACER
   JASON WONG
17      Assistant United States Attorney
18 JOSHUA LEWIS DRATEL
        Attorney for Defendant
19
20 Also present:  PATRICIA TRIANO, Spanish language interpreter
21
22
23
24
25

1             (In open court; case called)
2             THE DEPUTY CLERK:  Is the government ready to proceed?
3             MR. TRACER:  Yes.
4             THE DEPUTY CLERK:  Please state your name for the
5    record.
6             MR. TRACER:  Good afternoon, your Honor.  Daniel
7    Tracer for the government with Jason Wong.
8             MR. WONG:  Good afternoon, your Honor.
9             THE DEPUTY CLERK:  For Defendant Vidal-Galicia, are
10   you ready to proceed?
11            MR. DRATEL:  Yes, your Honor.  Josh Dratel for Mr.
12   Vidal-Galicia, who is seated beside me.
13            THE COURT:  Thank you.  We're assisted by a
14   interpreter who is certified to interpret between Spanish and
15   English.
16            Please place the interpreter under oath.
17            THE DEPUTY CLERK:  Please raise your right hand.
18            (Interpreter sworn)
19            THE COURT:  Mr. Vidal-Galicia, if you have any
20   difficulty understanding what is being said through the
21   interpreter, will you please let me know immediately?
22            THE DEFENDANT:  Yes.
23            THE COURT:  Thank you.
24            Mr. Dratel, has the presentence report been translated
25   to your client?

E4a6gals

1               MR. DRATEL:  Yes, your Honor.
2               THE COURT:  Have you both discussed it?
3               MR. DRATEL:  Yes.
4               THE COURT:  Do you have any objections to it other
5     than what might be contained in your written sentencing
6     submissions?
7               MR. DRATEL:  No, your Honor.
8               THE COURT:  Thank you.
9               The presentence report will be made part of the record
10    in this case and placed under seal.  If an appeal is taken,
11    counsel on appeal may have access to the sealed report without
12    further application to this Court.
13              I have the sentencing submissions from the defendant
14    of March 28th and April 8th.
15              Mr. Dratel, I understand you redacted certain
16    material.  Can you walk me through what you redacted?  It is
17    not clear to me.
18              MR. DRATEL:  The names of Mr. Vidal-Galicia's children
19    I think, your Honor.
20              THE COURT:  I am sorry?
21              MR. DRATEL:  The names of Mr. Vidal-Galicia's
22    children.
23              THE COURT: Just the names?
24              MR. DRATEL:  Yes.
25              THE COURT:  That's fine.  Thank you.

E4a6gals

1         I have a March 29th letter from the government, which
2    was filed on that same day.  The guidelines stipulation between
3    the parties and the presentence report arrived at a calculation
4    of a sentencing guidelines range of 46 to 57 months in prison
5    based on an offense level of 21 and a criminal history category
6    of three.  There is no objection to that and I adopt it as my
7    own.
8         This is a case in which the defendant was involved in
9    criminal activity as a young man, was convicted and deported.
10   I believe he was deported in 1999.  He reentered the country,
11   was prosecuted in connection with that reentry and a 46-month
12   term of imprisonment was imposed and he was deported Guinea, I
13   believe, this time in 2009 and he illegally reentered again and
14   this prosecution stems from that most recent illegal reentry.
15        As I understand it he was arrested by local
16   authorities on July 14th of 2013.  He was taken into
17   immigration custody on August 5th and transferred to the
18   custody of the U.S. Marshals on September 27th.  The underlying
19   charge against him, which had led to a state of rest on
20   July 19th didn't result in any conviction.  So he in essence
21   has been in custody on this illegal reentry charge, practically
22   speaking at least since July 19th of 2013.
23        I understand he needs medical care for his left foot
24   and right knee and I have reviewed with care the letters
25   submitted by his family members.

I will hear from you, Mr. Tracer.

MR. TRACER:  Thank you, your Honor.  The government will rest on its March 29th letter.

THE COURT:  Thank you.

Mr. Dratel.

MR. DRATEL:  Thank you, your Honor.  I know the Court has read our papers.  I just want to point out a couple things obviously because it is a balancing in terms of obviously a second offense for the illegal reentry.  A couple things.  One, the foot injury makes it very difficult and painful at the MCC. what I understand from what Mr. Vidal-Galicia told me today is that there is some paperwork that the MCC needs to do before they can get out to the hospital to do some surgery.  Murphy's law applying, it probably will happen when he is designated and that will happen within the next 30 or 60 days.  It is really a difficult proposition for him.  It affects the other side of his body and so there is a compensation factor.  It has been a struggle.  We tried our best, but there are limits as to what we can do at the MCC, even when certain parts of the bureaucracy are cooperative in that regard.

The second part is the ICE custody issue, both before and after, in terms of trying to figure out how the BOP will address the question first NYPD custody, which is not technically on this case.  He has been in ICE custody, which may not be technically on this case.  So that is respectively

1   two months that he has served from July to September that may
2   not get credit.  The back end he may wind up serving a month or
3   two before deportation after expiration of his sentence that
4   the Court imposes.
5          So those are factors that I think also can be
6   accounted for in the 3553(a) factors and the reason I think in
7   this case that they do merit consideration and calculation to
8   contribute to the calculation of the sentence is a couple of
9   things.  One is that why he is here in the U.S.  I think there
10  is no dispute that he came back because of a family crisis.
11  His teenage daughter, pregnant, going through some difficult
12  times.  He came to work to earn, be here.  Unlike many illegal
13  entry cases, certainly the ones I have been involved in, he was
14  found here not in the context of an arrest for a serious
15  offense.  It is not even a criminal offense under New York
16  State law and he wasn't even prosecuted.  The case was
17  dismissed.  It was a fare beat in the subway, which is the
18  result of an unlimited card that -- it is not worth the
19  explanation.  The point being that was not the kind of criminal
20  activity that we often find as part of the illegal reentry
21  calculus.
22         The second part of that is going back to the initial
23  robbery conviction that he had 25 years ago as a teenager
24  continues to haunt him and that is the law and I understand
25  that.  He understands that, but at the same time, again, you

1  have someone who has not been involved in serious affirmative
2  conduct other than obviously being here illegally.  I
3  understand and he understands that is why he disposed of this
4  cake quickly before motions.  He understood what was going on
5  and he understands a little better now, even more than he did
6  at the time of his first deportation, just how devastating it
7  is for his family.  I think the letters to the Court make that
8  quite clear as to that particular lesson and what he thought he
9  was doing for his family has now turned out to be something
10 that will hurt his family and he understands that quite
11 significantly.
12          So that is why I think that the Probation
13 recommendation sort of represents a ceiling and that there is
14 ample reason to go below that to account for all of these other
15 factors that I have identified for the Court.
16          The only other thing is designation in the northeast
17 so his family can see him.  I hesitate to recommend a specific
18 facility simply because of his alien status and how that will
19 affect his security score and where he can go.  I know Danbury
20 is a men's facility, but I don't know the security level.  He
21 may not be eligible for that.  Something in the northeast would
22 be our request.
23          THE COURT:  I am a little hesitant because of the
24 medical condition because I think that is probably the priority
25 here that he get appropriate medical care and so I would like

1  him to be designated to the facility where that is most likely
2  to happen.
3              MR. DRATEL:  I think that is right, your Honor.  If he
4  gets Devens, it is both in one.  So that will be great.
5              THE COURT:  Thank you.
6              Mr. Vidal-Galicia, is there anything you would like to
7  say to me on your behalf in connection with this sentence?
8              MR. DRATEL:  May he remain seated, your Honor, because
9  of his foot?
10             THE COURT:  Yes.
11             THE DEFENDANT:  Just I wanted to apologize of having
12 come to the country.  I really know I didn't do anything bad,
13 but I really apologize a thousand apologies to you, to your
14 family and to the United States.  That's all.
15             THE COURT:  So, Mr. Vidal-Galicia, I will impose a
16 term of imprisonment of 44 months.  I am reducing the sentence
17 from the lowest end of the guidelines range to make sure that
18 the roughly two months that you were in custody before the U.S.
19 marshals took custody of you are accounted for.  I am conscious
20 of the fact that the last time you were sentenced for illegal
21 reentry you received a sentence of 46 months and it is
22 difficult for me to sentence you to something less than that
23 given the fact that that sentence was not adequate to deter
24 your illegal reentry again.
25             This is tragic in some ways -- in many ways.  You were

E4a6gals

1  involved in very, very serious crimes as a young man; but that
2  is now a long time ago.  That continues to have an enormous
3  impact on your life and will for the rest of your life.  You
4  cannot come back here because of decisions you made as a young
5  man.  You cannot come back here unless you get expression from
6  our government to return.
7         I am going to impose a term of supervised release of
8  three years to follow because I want there to be that
9  additional deterrence imposed here should you reenter within a
10 three-year period of supervised release.
11        As conditions of supervised release, you are to report
12 to the Probation Office in the district in which you are
13 released within 72 hours of release from custody.  You may not
14 commit another federal, state or local crime.  You are not to
15 illegally possess a controlled substance.  You are prohibited
16 from possessing a firearm or other dangerous weapon.  You shall
17 cooperate in the collection of DNA.  You shall comply with the
18 standard conditions of supervised release.  You shall submit to
19 deportation and not unlawfully reenter the country.  You are to
20 be supervised by the district of your residence.  You are to
21 pay a special assessment of $100.  I decline to impose a fine
22 finding that you will be unable to pay one.
23        Counsel, is there any legal reason why I cannot impose
24 the sentence I have described as stated?
25        MR. DRATEL:  No, your Honor.

E4a6gals

1           MR. TRACER:  No, your Honor.
2           THE COURT:  I order the sentence I have described on
3  the record to be imposed as stated.
4           I don't believe there are any open counts.  Is that
5  right, Mr. Tracer?
6           MR. TRACER:  No, your Honor.
7           THE COURT:  So I am right?
8           MR. TRACER:  Yes.  There are no open counts.  You are
9  correct, your Honor.
10          THE COURT:  I need to advise the defendant of his
11 right to appeal.  If you are unable to pay the cost of an
12 appeal, you may apply for leave to appeal in forma pauperis.
13 Any notice of appeal must be made within 14 days of notice of
14 conviction.  I recommend to the Bureau of Prisons that the
15 defendant be provided medical care for his left foot and right
16 knee.
17          Anything else, counsel?
18          MR. TRACER:  Not from the government.
19          MR. DRATEL:  No, your Honor.  Thank you.
20          THE COURT:  Thank you.
21          THE DEPUTY CLERK:  All rise.
22                             -o-
23
24
25